[No. 18935-0-III. Division Three. June 28, 2001.]

MCCANDLISH ELECTRIC, INC., *Appellant*, v. WILL CONSTRUCTION COMPANY, INC., *Respondent*.

86

*David E. Sonn* (of *Jeffers, Danielson, Sonn & Aylward, P.S.*), for appellant.

*Stephen R. Crossland* (of *Stephen R. Crossland, P.S.*) and *Maureen F. Guinan* (of *Johnson, Gaukroger, Drewelow, Crossland & Woolett, P.S.*), for respondent.

*Paul R. Cressman, Jr., Paul Chuey, Arnold R. Hedeen, Bryan D. Caditz, Richard H. Robblee, Kristina M. Detwiler, Mark E. Brennan*, and *Lynn D. Weir*, amici curiae.

SCHULTHEIS, J. — McCandlish Electric, Inc., an electrical subcontractor, sued Will Construction Company, Inc., a general contractor, for damages it claimed were owed when Will allegedly violated RCW 39.30.060 by hiring a different electrical contractor to work on a public works contract in Chelan County. Although the trial court found that Will had engaged in the unethical practice of bid shopping, it also found that the statute did not afford McCandlish a legal cause of action against Will. For that reason, it granted Will's motion to dismiss at the close of McCandlish's case in chief. Four amicus briefs were filed in support of McCandlish's position. Because we are constrained to follow the statute we reluctantly affirm the trial court's decision.

## FACTS

The City of Leavenworth called for public bids on its Wastewater Treatment Plant Upgrade Project. Opening bid time was 2:00 P.M. on June 23, 1998. Will was one of the general contractors that submitted a bid on the project. Will works primarily on public works projects.

RCW 39.30.060, the subcontractor listing statute, requires each general contractor bidding on a public works contract to designate certain subcontractors who will be working on the public works project. The statute states in relevant part:

> Every invitation . . . shall require each bidder to submit as part of the bid, or within one hour after the published bid submittal time, the names of the subcontractors . . . with whom the bidder, if awarded the contract, will subcontract for performance of the work designated on the list . . . .

Former RCW 39.30.060 (1995). In submitting its bid to the City, Will complied with the listing statute when it listed

McCandlish as its designated electrical subcontractor on the public works bid. The parties agree that McCandlish was at all times qualified, ready, and able to perform the electrical work on the City's public works project. It is also undisputed that Will had used McCandlish on prior occasions and had a favorable experience. The electrical subcontractor was the only subcontractor Will was required to list in this bid.

Will learned it was the apparent low bidder on the project just after the bids were opened on June 23, 1998. Will discovered that its overall bid was approximately $200,000 lower than the next lowest bidder, Udelhoven General, Inc. Although not immediately known to the other parties, both Will and Udelhoven had designated McCandlish as the electrical subcontractor in their bids that had been submitted to the City.

On June 24, Will informed McCandlish that Will was the low bidder on the public works project and that Will had used McCandlish's numbers on the electrical portion of the bid. Will also told McCandlish that Will's bid was over $200,000 lower than the next lowest bid. As a result, McCandlish was advised that Will would be reviewing its bid to determine whether or not it would accept the City's project. Will inquired whether McCandlish could trim any costs from its electrical bid. McCandlish agreed to check on it and get back to Will with an answer.

The next day, McCandlish provided Will with some cost saving measures in an attempt to encourage Will to accept the public works contract. McCandlish believed that if it did not make the requested concessions, Will would withdraw its bid and McCandlish would not get the subcontract. At the time McCandlish was offering the concessions it did not know it was also the listed electrical subcontractor on the second lowest bid.

On July 2, 1998, the City officially awarded the public works contract to Will and the Notice of Award was signed. Will did not inform the City, prior to signing the Notice of Award, that it was contemplating substituting electrical

subcontractors. On July 9, Will formally agreed to accept the City's public works project. The next day, Will orally informed the City that it had made a mistake when it listed McCandlish as the electrical subcontractor on the project. Will asked the City to allow it to substitute Calvert Technologies for McCandlish as the electrical contractor on the project since Calvert's bid was actually lower than McCandlish's. The telephone call was memorialized in a letter dated July 13. McCandlish contends that Will did not receive the Calvert bid until the day after the bidding process had closed.

The City originally declined Will's request to substitute Calvert for McCandlish as the electrical subcontractor. In a letter dated July 17, 1998, the city engineer stated in part:

> We have reviewed your request with the City of Leavenworth and the City's attorney. In fairness to the competitive bidding process, the City of Leavenworth does not find this request justified and cannot grant the request based on the information submitted. If Will Construction wishes the City to consider this request further additional information must be provided.

Ex. 24.

As requested, Will submitted the required information regarding the specific circumstances surrounding its request to substitute Calvert for McCandlish. Will insists that in the rush to get the bid submitted in a timely fashion, it made a scrivener's error. It provided documentation that Calvert submitted a lower bid than did McCandlish. Contrary to McCandlish's late bid allegation, Will claims Calvert's bid came in minutes before the final bid was due. Will stated:

> I just ran out of time to change the electrical subcontractor's name and quite frankly I forgot about it, even though we had the lower electrical prices. Had I remembered that we did not have to write in any of the subcontractor information until one hour after bid time I would have certainly chosen that option.

Ex. 25.

By letter dated August 11, 1998, the City again denied

Will's request to substitute Calvert for McCandlish, stating:

On the one hand, Will listed McCandlish as its electrical subcontractor. It also appears that Will used the electrical bid figures provided by McCandlish in computing the overall bid price Will submitted to the City, and that it is not impossible for McCandlish to perform the work. Under these circumstances, we are worried that if the City allows Will to substitute a different electrical subcontractor for McCandlish, the City will find itself in litigation (a possibility already being raised by the International Brotherhood of Electrical Workers).

On the other hand, if we deny Will's request to substitute a different electrical subcontractor for McCandlish, we feel that Will may interpret our actions as some sort of "bad faith" on the part of the City (which is not true) and might attempt to retaliate against the City (either overtly or subtly), or take some other action detrimental to the construction process or orderly administration of the Contract, at some point in the future for the City's "refusal" to allow the substitution Will requested. Neither of these alternatives is acceptable to the City. What makes these alternatives even more unacceptable is that the City may be placed in this dilemma through no fault of its own.

Although you have agreed to indemnify the City in the event of litigation, I am unwilling to risk the time, finances, and reputation of the City and staff. For this reason, I must ask you to resolve this issue with McCandlish within 10 days of receiving this letter via fax (August 21), or I will have to honor your bid documents showing McCandlish as the electrical subcontractor of record. I will leave it to your judgement and creativity as to how best to approach McCandlish concerning the substitution you propose. If you choose to use an electrical subcontractor other than McCandlish, I will need a letter from McCandlish by August 21, 1998 indicating that they are in agreement with your course of action.

Ex. 27.

Will contacted McCandlish on August 13 to ask if it would sign a letter that stated it would be acceptable if Will used another electrical subcontractor on the project. McCandlish indicated that it would not sign such a letter. Ironically,

about this same time, Will requested that McCandlish perform some preliminary electrical work to repair some damage at the project site due to an unexpected problem. McCandlish completed the necessary repairs on August 17 and was paid by Will.

On August 20, Will again made a request to the City that it be allowed to substitute Calvert for McCandlish as the electrical subcontractor on the project. At this same time, the City received a letter from Calvert's attorney, who threatened to file a lawsuit against the City if Calvert was not allowed as the electrical subcontractor on the project.

For reasons not made clear in the record, the City finally agreed to allow Will to substitute Calvert for McCandlish as the electrical subcontractor on the public works project. What is clear, however, is that Will agreed to hold harmless and indemnify the City from any lawsuit that might arise as a result of the substitution. In a letter dated August 27, 1998, the City wrote to Will:

> I wanted to follow up on our conversation Tuesday to verify in writing that the City has decided to permit the substitution of electrical subcontractors on the City's wastewater treatment plant project as you have requested. Please keep in mind that this decision was not easy, and was based in large part on a desire to maintain a positive working relationship with your firm as well as your written agreement to indemnify both the City of Leavenworth and Varela & Associates in the event of a legal challenge resulting from the decision.

Ex. 31.

As a result of losing the electrical subcontract to Calvert, McCandlish commenced this lawsuit in Chelan County Superior Court alleging a violation of RCW 39.30.060. McCandlish sought monetary damages from Will.

A bench trial was held. At trial, it was brought out that none of the savings realized by Will in utilizing Calvert's lower bid was passed along to the City. It remained as pure profit to Will. At the close of McCandlish's case, Will made a motion to dismiss. Although the court determined that

Will had engaged in bid shopping it determined that McCandlish had no remedy under the statute. It stated, "if there was any indication that the legislature expected there to be a cause of action in case of a violation [of RCW 39.30.060], as there was here, I think, they could have simply said so and they did not say so." Report of Proceedings (RP) at 115. Findings and conclusions were signed and judgment was entered in favor of Will. McCandlish filed a timely notice of appeal, assigning error to findings of fact 6[1] and 8[2] and conclusions of law 1[3] and 2.[4]

## DISCUSSION

■ We are first asked to determine whether the trial court erred when it granted Will's CR 41(b)(3) motion to dismiss at the end of McCandlish's case in chief. We review an order regarding a motion to dismiss for manifest abuse of discretion. *State v. Gary J.E.*, 99 Wn. App. 258, 261, 991 P.2d 1220, *review denied*, 141 Wn.2d 1020 (2000).

McCandlish contends that the purpose of the contractor's listing statute, RCW 39.30.060, is to prevent the unethical practice of bid shopping and bid peddling. This in turn, it contends, protects the public treasury. Although this appears to be a case of first impression, the practice of "bid shopping" was mentioned in an Attorney General Opinion from 1994. A relevant portion of that opinion states:

---

[1] Finding of Fact 6 states:

"The City of Leavenworth consented to the substitution of Calvert Technologies, Inc." Clerk's Papers (CP) at 32.

[2] Finding of Fact 8 states:

"Will Construction was at all times ready, willing and able to perform in accordance with its bid." CP at 32.

[3] Conclusion of Law 1 states:

"RCW 39.30.060 does not prohibit the substitution of a subcontractor that a prime contractor lists in submitting its bid on a public works project." CP at 32.

[4] Conclusion of Law 2 states:

"RCW 39.30.060 does not create a cause of action for damages by a subcontractor listed pursuant to RCW 39.30.060 against a contractor who substitutes another subcontractor for that listed subcontractor." CP at 32.

The report [Final Legislative Report] describes a form of "bid shopping" in which a contractor obtains quotes from subcontractors that are used in preparation of the contractor's bid on the public works project. Then, after having been awarded the bid, the general contractor would either substitute another subcontractor who would be willing to do the work for less money (thus benefiting directly from the savings), or would use the threat of changing subcontractors to force the original subcontractor to reduce its price. This "bid shopping" practice is regarded as unethical by many in the building industry. Our review of the legislative history showed that there was support from both the general contractors and the specialty contractors for Substitute House Bill 1370. [The bill was codified as RCW 39.30.060.]

1994 Op. Att'y Gen. No. 14, at 4 n.2. The specific question the above cited Attorney General Opinion addressed was whether the successful prime contractor bidder on a public works project was obligated to use the subcontractors that had been listed as required by RCW 39.30.060. The opinion declares:

We answer your question in the qualified affirmative. RCW 39.30.060 necessarily implies that bidders subcontract with those subcontractors whose names they have submitted with the bid. Once a bid has been accepted and a contract created, the terms of the contract will govern the extent to which subcontractors may subsequently be substituted.

1994 Op. Att'y Gen. No. 14, at 4 n.2.

 In this appeal, McCandlish asks us to strictly construe the wording of the listing statute in the light most favorable to its position. We repeat the relevant sentence:

Every invitation . . . shall require each bidder to submit as part of the bid, or within one hour after the published bid submittal time, the names of the subcontractors . . . with whom the bidder, if awarded the contract, *will subcontract* for performance of the work designated on the list . . . .

Former RCW 39.30.060 (1995) (emphasis added). Appellate courts review questions of statutory interpretation and construction de novo. *State v. Azpitarte*, 140 Wn.2d 138,

140-41, 995 P.2d 31 (2000). The reviewing court's obligation is to give effect to the intent of the Legislature. Review begins with the plain language of the statute. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995).

A review of the legislative history of this statute is helpful to our analysis. RCW 39.30.060 was originally introduced as proposed House Bill 1370. The proposed legislation expressly prohibited the substitution of a listed subcontractor except under limited circumstances. Penalties were built into the proposed bill to prevent what has been referred to as bid shopping and/or bid peddling. However, from the plain language of the statute, as adopted, it is clear that the Legislature rejected the substitution of subcontractor and penalty language of the originally proposed bill.

We agree with the Attorney General's Opinion that the statute certainly implies that a successful prime contractor is expected to utilize the subcontractor listed on its bid proposal. However, the statute does not definitively state that a prime contractor may not, under any circumstances, substitute another subcontractor for the listed subcontractor. Nor does the statute expressly or tacitly give an aggrieved subcontractor a right of action against a prime contractor once the public entity and the prime contractor have entered into a contract for the project.

Washington courts have given bidders a limited remedy to sue for injunctive relief before a contract is signed. *Peerless Food Prods., Inc. v. State*, 119 Wn.2d 584, 590-91, 835 P.2d 1012 (1992); *Dick Enters., Inc. v. King County*, 83 Wn. App. 566, 569, 922 P.2d 184 (1996) (aggrieved bidder on a public project may sue to enjoin the award of a public contract). Accordingly, the only remedy available to McCandlish prior to the formal offer and acceptance of the public contract was to sue to enjoin the City from awarding the public works contract to Will. This was not done. The parties dispute whether McCandlish had actual knowledge that it was not going to be awarded the electrical subcon-

tract in order to take advantage of this injunctive relief. There is some evidence that Will may have informally contacted McCandlish to say it was off the project through a phone call made on July 2, 1998. We note with suspicion, however, that Will waited to formally inform the City that it was not going to utilize McCandlish as the electrical subcontractor until the day after the contract was signed. Regardless, once Will signed the contract with the City on July 9, McCandlish no longer could utilize the injunctive remedy.

■■ We agree with McCandlish that the evidence does not support the court's finding of fact 8 to which McCandlish has assigned error. There is no doubt that Will listed McCandlish as the electrical subcontractor in its bid on the project and utilized McCandlish's numbers in determining its own final bid calculation. However, because we are constrained to follow the law, we must find that the trial court did not err when it determined that RCW 39.30.060 does not prohibit the substitution of a subcontractor that a prime contractor has listed when submitting a bid on a public works contract. Likewise, the court did not err when it determined that the listing statute does not create a cause of action for damages by a subcontractor against a prime contractor who substitutes another subcontractor for the one listed in the bid proposal. Both the plain language of the statute and the legislative history of the statute support this conclusion.

Next, we are asked to determine whether the trial court should have implied a cause of action in favor of McCandlish when it determined that Will had affirmatively engaged in bid shopping. McCandlish and the amicus briefs strongly urge us to find that the trial court should have allowed an implied remedy in favor of the subcontractors.

■ A cause of action will be implied only if three conditions are met: (1) the plaintiff is within the class for whose benefit the statute was enacted, (2) the legislative intent, explicitly or implicitly, supports creating or denying a remedy, and (3) implying a remedy is consistent with the

underlying purpose of the legislation. *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990). Where a statute creates a new right but no remedy, the common law will provide that remedy. *Id.* at 920.

 Competitive bidding statutes exist to safeguard the public treasury from the high costs of fraud and/or collusion. *Dick Enters.*, 83 Wn. App. at 569. As such, Washington courts have found that a bidder's interest in a fair forum is secondary. It follows then, that even where the wrongful award of a contract violates a bidder's interest in a fair forum, the bidder may not sue for damages. To allow damages would violate the public interest by subjecting taxpayers to further penalties when they are already injured by paying too high a price under an illegal contract. *Peerless*, 119 Wn.2d at 591. The aggrieved bidder may instead sue to enjoin the award of an illegal contract, because the public benefits from preventing a contract for an excessive amount. *Id.* at 596.

 Reviewing the legislative history, it is clear that RCW 39.30.060 was not enacted for the financial benefit of potential subcontractors on a public works project, but rather to standardize and regulate the competitive bidding process in public works contracts. Moreover, nothing in the wording of the statute supports the creation of a remedy for disappointed subcontractors, nor would doing so be consistent with the purpose of the statute. Weighing the *Bennett* factors, there is but one conclusion—the statutory scheme does not support implying a private cause of action under this statute.

Affirmed.

KATO, J., concurs.

BROWN, A.C.J. (concurring) — I do not feel "constrained" as does the majority to affirm. Further, I do not agree that RCW 39.30.060 "certainly implies that a successful prime contractor is expected to utilize the subcontractor listed on its bid proposal." Majority Opinion at 95. Careful contract-

ing by the parties, including the public works owner, avoids disputes like this.

The law and its application to these facts are clear. Notably, the law provided that subcontractors submitting bids at less than 10 percent of the total are excluded outright from any protection. Former RCW 39.30.060 (1995). In my view, distinctions like this are best left to the Legislature where policy making is accomplished. Our function is to administer the law as written. As written, we must affirm. Therefore, I concur.

Review denied at 145 Wn.2d 1012 (2001).