[No. 47148-1-I.   Division One.   March 11, 2002.]

QUINN CONSTRUCTION COMPANY, L.L.C., *Appellant*, v. KING COUNTY FIRE PROTECTION DISTRICT NO. 26, *Respondent*.

22

*Stanton P. Beck, Michael B. King,* and *David C. Spellman* (of *Lane Powell Spears Lubersky, L.L.P.*), for appellant.

*Joseph J. Straus* (of *Bullivant Houser & Bailey*); and *Clark B. Snure* (of *Snure Law Office*), for respondent.

*Mark Rosencrantz* on behalf of Associated General Contractors, amicus curiae.

COLEMAN, J. — Quinn Construction Company bid on a public works project to build a new facility for King County Fire Protection District No. 26. The District awarded the project to another bidder. Quinn objected because the other bidder missed the bid submission deadline by 5 to 10 seconds. Quinn obtained a temporary restraining order to enjoin the District from entering into the contract with the other bidder, but the District and the other bidder had already signed the contract. The trial court later denied Quinn's application for a preliminary injunction, ruling that the District had a right to waive the bid deadline. At a

subsequent hearing, the court granted the District's motion to dismiss the action under CR 12(b)(6).

On appeal, Quinn argues that the trial court erred in concluding that the District had reserved the right to accept the late bid. Quinn also asks the court to reexamine prior decisions limiting a disappointed bidder's remedies to an injunction obtained before a contract is signed with another bidder. Finally, Quinn argues that the trial court erroneously stayed discovery because the records Quinn sought were subject to disclosure under the public records act (PRA), RCW 42.17.250-.348. The District cross-appeals, claiming the court erred by failing to award attorney fees for wrongful injunction.

Because Quinn failed to show any unfair advantage to the late bidder, the District had the right to accept the late bid. Accordingly, we need not decide whether Quinn had standing to challenge the bid award once the contract had been signed. Once the court denied Quinn's request for injunctive relief, Quinn's remaining claims for damages could not be sustained as a matter of law, and Quinn had no constitutionally protected property interest in being awarded the contract. Further, although Quinn has an ongoing right to any nonexempt public records held by the District, the trial court's refusal to mandate disclosure under the PRA does not warrant reversal because Quinn did not make it clear to the trial court that it wanted the records even if the lawsuit were to be dismissed. Accordingly, we affirm. Regarding the District's cross-appeal, we affirm the trial court's denial of attorney fees for wrongful injunction; such an award would be inappropriate where, as here, an injunction is the only relief available.

FACTS

The Fire District is a municipal corporation and is required by law to advertise for competitive bids on construction projects. RCW 52.14.110. The District published an invitation to bid on a project to expand a fire station

24

facility. The bid invitation included the following instructions: "Bids shall be deposited at the designated location prior to the time and date for receipt of the Bids. Bids received after the time and date for receipt of Bids will be returned unopened." The District also issued supplementary instructions, which repeated the above warning. But another section of the instructions form stated:

> It is the intent of the Owner to award a Contract to the lowest qualified Bidder provided the Bid has been submitted in accordance with the requirements of the Bidding Documents and does not exceed the funds available. The Owner shall have the right to waive informalities and irregularities in a Bid received and accept the Bid which, in the Owner's judgment, is in the Owner's own best interests.

The District set 3 P.M. on February 22, 2000, as the deadline for submission of bids. On that day, Quinn and Korsmo Construction both submitted bids. Korsmo's representative and Quinn's representative were both in the room in which the bid opening occurred for some time prior to the deadline. The fire chief, who conducted the bid opening, designated the clock on the station wall as the bid clock. Korsmo's representative was still filling out the bid form, while talking on a cellular telephone, in the last few minutes before 3 P.M. When the chief called "time," all the bids except Korsmo's had been received. Korsmo's representative had finished filling out the bid form before the bid clock expired, but was having trouble placing the bid in the envelope. He handed Korsmo's sealed bid to the fire chief between 5 and 10 seconds after 3 P.M. The chief accepted the bid and then declared that the bidding was closed and that no more bids would be received. Quinn and several other bidders immediately objected that Korsmo's bid was late. The chief opened all the bids and reviewed them. The chief told the bidders that the Board of Commissioners might take action to award the contract at its next regular meeting, scheduled for March 8, 2000.

It was not immediately clear whether Korsmo or Quinn would be the lowest bidder. In the bid specifications, the

District had requested a base bid and a bid on three alternatives. Two of the alternatives would add to the cost of the project, and one would make the project less expensive. Korsmo was the lowest bidder on the base bid, but Quinn would have been the lowest bidder if the alternatives had been adopted.

At the March 8, 2000 meeting, the commissioners voted not to accept the bid alternatives, making Korsmo the low bidder, and to award the contract to Korsmo. On Friday, March 10, 2000, Quinn requested that the Attorney General's Office take action to prevent the award of the contract to Korsmo. On the same day, Quinn filed a complaint asking the court to restrain award of the contract to Korsmo. Three days later, on Monday, March 13, 2000, Quinn applied for a temporary restraining order (TRO) against the District and Korsmo. That morning, Quinn's attorney faxed a letter to the attorneys representing Korsmo and the District, indicating that he would be seeking a TRO at 1:30 that afternoon. The District and Korsmo signed the contract at 12:30 P.M. Later that day, a court commissioner entered a TRO restraining the District and Korsmo from entering into a contract.

After obtaining the TRO, Quinn filed a motion for a preliminary injunction. Quinn pleaded two grounds for an injunction: (1) the District had wrongfully disregarded the tardiness of Korsmo's bid and (2) the District had wrongfully attempted to frustrate Quinn's right to relief by signing the contract with Korsmo after receiving notice of Quinn's impending TRO application. After hearing oral argument on Quinn's motion, the court denied injunctive relief. Although the District argued that Quinn lacked standing to enjoin the bid award because the contract had already been signed before the TRO was entered, the court assumed standing. Nevertheless, the trial court ruled that the District was within its rights to waive Korsmo's tardiness as a minor informality. Accordingly, the trial court ruled that the TRO should never have been entered and that Quinn had failed to demonstrate a right to further injunctive relief.

The District then filed a motion to dismiss the action pursuant to CR 12(b)(6). Meanwhile, Quinn subpoenaed several documents, including records of the District secretary and the bonding agent who submitted Korsmo's bid. The District moved for a stay of discovery pending the court's decision on the motion to dismiss. Quinn asserted that the information it sought was of public record and therefore should be disclosed under the PRA. The court stayed discovery pending the hearing on the motion. On May 30, 2000, after hearing oral argument, the court granted the District's motion to dismiss. Quinn moved for reconsideration, and the District moved for damages for wrongful injunction. The trial court denied both motions. This appeal and cross-appeal followed.

## THE PRELIMINARY INJUNCTION

Quinn first argues that the trial court erred in denying its application for a preliminary injunction. We disagree. Absent any showing of unfair advantage to the tardy bidder, the trial court correctly concluded that the 5 to 10 second delay was an informality that the District was entitled to waive. And because the tardiness of Korsmo's bid was the only irregularity on which Quinn based its application for the injunction, we need not decide whether a showing of collusion or bad faith in accepting the late bid could justify a different result under different circumstances.

We review a court's decision to grant or deny a preliminary injunction for abuse of discretion. *Wash. Fed'n of State Employees, Council 28 v. State*, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983); *Rabon v. City of Seattle*, 135 Wn.2d 278, 284, 957 P.2d 621 (1998). "For purposes of granting or denying injunctive relief, the standard for evaluating the exercise of judicial discretion is whether it is based on untenable grounds, or is manifestly unreasonable, or is arbitrary." *Wash. Fed'n*, 99 Wn.2d at 887. At a hearing on preliminary injunction, the party moving for the injunction bears the

burden of showing that the injunction is necessary to protect a "clear legal or equitable right." *Wash. Fed'n*, 99 Wn.2d at 888.

Because the primary purpose of requiring competitive bidding on government contracts is to ensure prudent expenditure of public funds, a municipal authority may award a contract to a low bidder whose bid fails to conform with formal requirements, so long as any irregularities in the bidding process are not material. *Gostovich v. City of W. Richland*, 75 Wn.2d 583, 587, 452 P.2d 737 (1969) (holding city could waive tardiness of bid mailed before deadline but received two days late). " 'The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders.' " *Gostovich*, 75 Wn.2d at 587 (quoting *Duffy v. Vill. of Princeton*, 240 Minn. 9, 60 N.W.2d 27, 29 (1953)). Although Quinn and several of the contractors present at the bid opening filed declarations stating that the 5 to 10 second delay gave Korsmo an unfair advantage, no one articulated any specific advantage gained by the delay. We agree with the trial court's conclusion that under the test adopted in *Gostovich*, Quinn failed to show a material irregularity that would justify entry of a preliminary injunction.

Quinn argues that *Gostovich* is distinguishable because the time requirement here, unlike the deadline in *Gostovich*, was mandatory and could not be waived. Quinn relies on the following provision in the supplemental bidding instructions:

> 5.3.5 Prior to the bid opening, the Owner's representative will designate the official bid clock. Any part of the bid proposal or bid modification not received prior to the time specified, per the designated bid clock, will not be considered and the bid will be returned unopened.

Quinn argues that the District limited its own discretion by this language. This argument is unpersuasive. In another section of the bid instructions the District reserves the right to waive "informalities and irregularities" and to "accept

the Bid which, in the Owner's judgment, is in the Owner's own best interests." This language reserved for the District all the discretion that the *Gostovich* test allows: the right to waive any irregularity that did not substantially advantage Korsmo.

Quinn also argues that *Gostovich* is distinguishable because in that case, the court noted that the " 'good faith and honesty' of the municipal authorities" were not questioned. *Gostovich*, 75 Wn.2d at 588. But the only act of bad faith Quinn alleged in its application for the injunction—the hurried signing of the contract to avoid an injunction—occurred long after the bid was opened, so it could not have given Korsmo an unfair advantage *in the bidding process.* Quinn nevertheless asserts that this court should assume for purposes of this appeal that the District's acceptance of the late bid was an arbitrary act of favoritism toward Korsmo and that bad faith and collusion between Korsmo and the District tainted the entire bidding process.[1] Quinn, however, never presented any evidence or made any argument at the preliminary injunction stage that would have justified a finding of collusion between the District and Korsmo. The trial court, therefore, was well within its discretion when it denied the injunction, and we need not decide whether, or in what circumstances, evidence of favoritism in waiving an otherwise immaterial irregularity might justify a modification of the rule in *Gostovich.*

Quinn also urges this court to hold that mandatory time requirements may not be waived. Quinn cites several other jurisdictions that have taken this position. *See, e.g., Holly's, Inc. v. County of Greensville,* 250 Va. 12, 458 S.E.2d 454, 457 (1995) (citing *Gostovich* as contrary authority).[2] But

---

[1] This argument confuses the procedural posture of Quinn's claim for damages with the procedural posture of its application for preliminary injunction. As explained above, in reviewing the trial court's discretionary decision regarding a preliminary injunction, we do not assume facts that Quinn did not plead or prove in seeking the injunction.

[2] Quinn cites several other cases from other jurisdictions that are not directly on point. In two of the cases, mandatory statutory time limits applied. *See Haw. Corp. v. Kim,* 53 Haw. 659, 500 P.2d 1165, 1169 (1972); *Rexton, Inc. v. State,* 521

*Gostovich* rejected this rule by holding that late bids are subject to the same materiality analysis as other irregularities. *Gostovich*, 75 Wn.2d at 586, 588. The trial court, therefore, correctly applied the *Gostovich* rule in determining that Quinn had not established a right to injunctive relief.

## QUINN'S STANDING TO ENJOIN THE CONTRACT

The District argues that this court could affirm on the alternate ground that Quinn did not have standing to enjoin the contract once it was signed. This is clearly the current rule. *See Dick Enters., Inc. v. King County*, 83 Wn. App. 566, 569, 922 P.2d 184 (1996). *See also BBG Group, LLC v. City of Monroe*, 96 Wn. App. 517, 982 P.2d 1176 (1999). Quinn nevertheless urges us to make an exception where, as Quinn alleges here, a party rushes to execute a contract in order to prevent an injunction. In addition, the Associated General Contractors of Washington has also filed a brief as amicus curiae, in which it argues that the remedies now available to disappointed bidders are inadequate. It is, however, not necessary to decide if, or under what circumstances an exception to the current rule might be appropriate. Quinn's sole basis for seeking the TRO was the 5 to 10 second delay in receiving Korsmo's bid. Thus, the trial court correctly concluded that, putting aside the issue of standing, the TRO should never have been entered absent a showing of unfair advantage to Korsmo. Accordingly, we find it unnecessary in this case to reexamine our previous holdings that limit a disappointed bidder to injunctive relief before a contract with another bidder is executed.

N.W.2d 51, 53-54 (Minn. Ct. App. 1994) (distinguishing case in which agency had discretion to accept late bid; instant case governed by mandatory statutory time limit). In *City of Atlanta v. J.A. Jones Construction Co.*, 195 Ga. App. 72, 392 S.E.2d 564, 569, *rev'd on other grounds*, 260 Ga. 658, 398 S.E.2d 369 (1990), the court affirmed a jury's determination that the delay at issue was material, under a test identical to *Gostovich*. Thus, there, as in *Gostovich*, the case-by-case determination of materiality was considered to be a question of fact.

## QUINN'S CLAIMS FOR DAMAGES

■ ■ Quinn also argues that the trial court erred in dismissing its claim for damages against the District after Quinn's application for a preliminary injunction had been denied. A court may grant a motion to dismiss pursuant to CR 12(b)(6) if " 'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.' " *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987) (quoting *Bowman v. John Doe*, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)). Because damages are unavailable as a remedy for a disappointed bidder on a public project, the trial court correctly concluded that no set of facts would entitle Quinn to relief once Quinn's motion for preliminary injunction had been denied. Accordingly, we affirm the dismissal of Quinn's damages claim.

In *Peerless Food Products, Inc. v. State*, 119 Wn.2d 584, 597, 835 P.2d 1012 (1992), the Supreme Court of Washington held that consequential damages are unavailable to a disappointed bidder on a public works project.

> A bid constitutes an offer to contract with the State which may or may not be accepted. Allowing damages to a low bidder when that bidder is denied a public contract and the contract is awarded to a higher cost bid is a remedy inherently conflicting with the primary policy behind public bidding law: the protection of the public purse.

*Peerless*, 119 Wn.2d at 597. Quinn nevertheless argues that this court should read *Peerless* narrowly and allow damages that are not based on contract expectancy.

### 1. Bid Preparation Costs

■ Quinn first argues that we should allow Quinn to recover its bid preparation costs on a theory of promissory estoppel. *See Kajima/Ray Wilson v. L.A. County Metro. Transp. Auth.*, 23 Cal. 4th 305, 1 P.3d 63, 96 Cal. Rptr. 2d 747 (2000) (bid preparation costs recoverable on theory of

promissory estoppel). Quinn further argues that because its claim was disposed of on a motion to dismiss, this court must assume Quinn was the low bidder. But even assuming Quinn was the low bidder, making any monetary damages available to a disappointed bidder would contravene the public policy underlying the Supreme Court's decision in *Peerless*: where protection of the public purse and private interests clash in the public bidding arena, the public must prevail. *Peerless*, 119 Wn.2d at 597. *See also Dick*, 83 Wn. App. at 571. Given the unqualified language in *Peerless* precluding damages, we decline to adopt *Kajima* under the circumstances of this case. *See Peerless*, 119 Wn.2d at 596.

## 2. Due Process

■ Quinn also argues that the trial court erred in dismissing its claim for damages under 42 U.S.C. § 1983. Quinn argues that the District deprived it of constitutionally protected property interests without due process of law. Although no court in this state has addressed this issue,[3] a minority of federal jurisdictions have held that an unsuccessful bidder on a state contract possesses a constitutionally protected property interest. *See Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 857 (10th Cir. 1991) (citing split of federal authority). But, as noted in *Buckley*:

> In each of the cases addressing this question, the courts necessarily focused on whether the state law in question conferred a property interest. *See also, e.g., Jacobs, Visconsi & Jacobs Co.* [*v. City of Lawrence*], 927 F.2d [1111,] 1116-17 [(10th Cir. 1991)] (reviewing state law to determine existence of property interest). To this extent, the question whether entitlement exists should be decided on a case-by-case basis through review of the implicated state law. *See Metric Constructors, Inc. v. Gwinnett County*, 729 F. Supp. 101, 102 (N.D. Ga. 1990) ("[T]he position most faithful to the Supreme Court's decision in [*Board of Regents of State Colleges v.*] *Roth*[, 408 U.S. 564,

---

[3] In *BBG*, this court declined to reach the merits of a similar claim because it was raised for the first time on appeal. *See BBG*, 96 Wn. App. at 522 n.10.

577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972)] is that a constitutionally protected property interest exists if acknowledged by applicable state law.").

*Buckley*, 933 F.2d at 857-58.

Under Washington law, Quinn had no property interest even if it had been the low bidder. Although *Peerless* did not directly address due process or § 1983, it defined property rights in a way that undermines Quinn's claim: competitive bidding laws give the public a right to frugal state contracting through competition; they do not give low bidders a vested right to state contracts. *Peerless*, 119 Wn.2d at 596. Accordingly, we hold that a bidder on a public works contract has no constitutionally protected property interest in being awarded a government contract.

Quinn also argues that the District's bid instructions created a constitutionally protected due process interest by mandating that late bids must be returned unopened. In support of this argument, Quinn cites *Conard v. University of Washington*, 119 Wn.2d 519, 528-29, 834 P.2d 17 (1992). Quinn's reliance on *Conard* is misplaced. In *Conard*, the Supreme Court noted that rules or procedures that mandate a particular result could create protected due process interests, even where the procedures themselves are not constitutionally mandated. *Conard*, 119 Wn.2d at 528-29. We have already concluded, however, that the District reserved the right to waive the bid's tardiness as an immaterial irregularity.[4] Because rejection of Korsmo's tardy bid was not mandated by the District's rules, *Conard* does not apply. *See Conard*, 119 Wn.2d at 528-29. Accordingly, Quinn failed to state a claim for damages under 42 U.S.C. § 1983.[5]

---

[4] We need not determine whether the acceptance of a bid with a material irregularity would trigger due process protections.

[5] Quinn also argues that it should be allowed to seek a writ of mandamus or declaratory judgment from the court directing the District to adopt procedures for bid disputes. But as concluded above, Quinn has no constitutionally protected property interest that would mandate due process protections. Absent such a constitutional mandate, it is the role of the Legislature to decide whether further procedural protections are warranted.

## THE PUBLIC RECORDS ACT

Finally, Quinn argues that the trial court erred when it quashed Quinn's subpoena pending the hearing on the District's CR 12(b)(6) motion. Quinn claims it was entitled to the records pursuant to the PRA. The District argues that Quinn never made a PRA request,[6] that quashing the subpoena was within the trial court's discretion, that much of the requested information was privileged, and that any error was harmless.

The trial court clearly had the discretion to stay discovery until after the CR 12(b)(6) hearing. CR 26(c)(1). Nevertheless, because the District is a public agency, the law is now clear that Quinn also had a right, under the PRA, to independently seek any public records kept by the District that did not fall within specific statutory exemptions. *See O'Connor v. Dep't of Soc. & Health Servs.*, 143 Wn.2d 895, 905, 25 P.3d 426 (2001) (holding court erred by ordering plaintiff in litigation to seek public records only through discovery; records available under discovery rules not exempt from PRA).[7] Under the PRA, as interpreted by *O'Connor*, the District was required to disclose public information regardless of pending litigation unless the District could show the information was privileged. *O'Connor*, 143 Wn.2d at 910. Thus, once the District claimed an exemption to the PRA, the trial court, at Quinn's request, should have conducted a hearing to determine which information was privileged and which information was to be disclosed. RCW 42.17.340.

---

[6] Quinn cited the PRA in several letters to the District's attorneys when arguing that the District should not oppose discovery, but Quinn's first explicit PRA request appeared in Quinn's response to the District's motion for stay of discovery:

> Under the public records act, the District also has the burden of proving the documents can be withheld . . . . Quinn *could make a public records request to obtain the same documents and hereby makes one* for the subpoenaed documents, communications with Quinn's lawyers, and the insurance policies and reservation of rights letters.

(Emphasis added.)

[7] *O'Connor* had not been decided when the trial court stayed discovery and denied Quinn's claim under the PRA.

The District is correct, however, that any error was harmless as to the outcome of the CR 12(b)(6) hearing for which the information was sought. All that remained at that point were Quinn's claims for damages, which were clearly precluded as a matter of law. Nevertheless, Quinn is still entitled to any nonprivileged documents under the PRA.

If Quinn still desires those documents, nothing prevents it from making a public records request directly to the District. If the District claims a statutory exemption due to privilege or work product, Quinn may ask the court, pursuant to RCW 42.17.340, to determine which documents, if any, are exempt from disclosure. Although Quinn asserted an independent right to the records under the PRA, the records request was always made in the context of the lawsuit and for the purpose of advancing the litigation. Quinn never made it clear to the trial court that it was requesting the records regardless of the disposition of the motion to dismiss. Further, *O'Connor* was decided after the trial court denied Quinn's final PRA request, so the trial court did not have the benefit of the Supreme Court's analysis in that case. We therefore decline to remand this case for consideration of statutory damages against the District for wrongful withholding of public records. Because Quinn has not prevailed in an action seeking disclosure of public records, we also deny Quinn's request for fees pursuant to RCW 42.17.340(4).

## WRONGFUL INJUNCTION (CROSS-APPEAL)

The District argues on cross-appeal that the trial court abused its discretion because it did not provide any reasoning in support of its decision denying attorney fees to the District for wrongful injunction. On this issue, *Confederated Tribes v. Johnson*, 135 Wn.2d 734, 958 P.2d 260 (1998) (affirming trial court's decision not to award attorney fees) is instructive:

> The applicable equitable rule is that attorney fees *may* be awarded to a party who prevails in dissolving a wrongfully

issued injunction or, as here, temporary restraining order. The award is discretionary . . . . The purpose of the rule permitting recovery for dissolving a restraining order is to deter plaintiffs from seeking relief *prior to a trial on the merits*. The purpose of the rule would not be served where injunctive relief prior to trial is necessary to preserve a party's rights pending resolution of the action. Here, the trial on the merits would have been fruitless if the records had already been disclosed.

*Johnson*, 135 Wn.2d at 758 (second emphasis added) (citations omitted).

This reasoning is even more applicable in the context of public bidding. Here, an injunction was not only necessary to preserve any rights Quinn might have; it was the *only* relief available to Quinn. *See Dick*, 83 Wn. App. at 569. Thus, for all practical purposes, the hearing on the injunction *was* the trial on the merits. The purpose of the equitable rule allowing attorney fees for wrongful injunction is to encourage plaintiffs to prove the merits of their cases before seeking relief. That purpose would not be served by deterring plaintiffs from seeking the only relief available to them under the law. Accordingly, an attorney fee award premised upon the theory of wrongful injunction would have been inappropriate in this case.[8]

The District argues that *Johnson* is distinguishable because here the court did not provide any reasoning supporting its decision to deny attorney fees. Although a lack of reasoning by the trial court can support remand of some discretionary decisions, there is no indication here that the trial court's decision was based on an erroneous conclusion of law. *Cf. Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 143, 937 P.2d 154, 943 P.2d 1358 (1997) (reversing fee award for exact amount of injunction bond because it appeared court erroneously believed award restrained to that amount, and court failed to provide reasoning indicating otherwise). On the contrary, as we have concluded above, any award of fees for wrongful injunction would run

[8] The District also moved for sanctions pursuant to CR 11, but the District has not assigned error to the court's failure to award Rule 11 sanctions.

afoul of the Supreme Court's decision in *Johnson*. Accordingly, the trial court's failure to set forth its reasoning does not warrant reversal in this case.

## CONCLUSION

We hold that a tardy bid, without more, is not a material irregularity in the bidding process. Accordingly, the District was entitled to accept Korsmo's late bid, and the trial court correctly denied Quinn's application for a preliminary injunction. Once Quinn's application for an injunction had been denied, the trial court correctly concluded that Quinn failed to state a claim for noninjunctive relief because neither contract damages nor damages for deprivation of due process are available as a remedy for a disappointed bidder on a public works contract. We further hold that neither a remand for proceedings under the PRA, nor attorney fees for wrongful injunction are appropriate under the facts of this case. Accordingly, the trial court's orders denying injunctive relief, staying discovery, dismissing Quinn's case, and denying attorney fees to the District are affirmed.

BECKER, A.C.J., and APPELWICK, J., concur.

Reconsideration denied April 8, 2002.