**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ETCO SERVICES, LLC, an Idaho limited
liability company,

Plaintiff - Appellant,

v.

KILLIAN CONSTRUCTION CO., DBA
Killian Construction, Inc., a Missouri
corporation,

Defendant - Appellee.

No. 12-35301

D.C. No. 2:11-cv-00042-LRS

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted June 3, 2013
Seattle, Washington

Before: ALARCÓN, McKEOWN, and IKUTA, Circuit Judges.

ETCO Services appeals from the district court's order granting summary

judgment in favor of Killian Construction and denying ETCO's motion for partial

summary judgment in this diversity action alleging that Killian violated Revised

---

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Code of Washington § 39.30.060, a Washington statute prohibiting substitution of listed subcontractors in furtherance of bid shopping or bid peddling. ETCO contends that Killian violated the statute when it listed ETCO as a plumbing subcontractor on a bid it submitted as a prime contractor and later substituted a different subcontractor to perform the work in ETCO's place. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## I

In September 2010, Central Washington University ("CWU") sought bids for demolition of an existing building and construction of a new residential hall. Killian is a Missouri corporation that acts as a general contractor on construction projects throughout the United States. (Id. at ¶ 2.) ETCO is a subcontractor that performs plumbing and HVAC work (Heating, Ventilation, Air Conditioning) in Washington and Idaho. (Doc. 48 at ¶ 1.)

On October 21, 2010, ETCO provided Killian with a subcontract bid for Plumbing work for $5,052,000. ETCO's bid did not include the HVAC and Controls scopes of work. (Id. at ¶ 8.) Another subcontractor, JRT Mechanical, provided Killian with a bid to perform all combined Plumbing, HVAC and Controls work for the CWU project for $5,500,000. (Id. at ¶ 7.) JRT's bid was the lowest bid Killian received for the Plumbing, HVAC, and Controls scopes of work

2

for the CWU project. (Doc. 48 at ¶ 27.) However, Killian erroneously read ETCO's bid as including HVAC and Controls scopes of work (which it did not), in addition to plumbing and hydronics work, and thus considered ETCO's bid to be the lower of the two bids. Killian submitted a timely prime contract bid to CWU that included ETCO's sub-contract bid of $5,052,000 for all three scopes of work. Killian was the low bidder for the CWU project at $19,387,000.

On November 16, 2010, after discovering its mistake, Killian advised ETCO that it would not be able to accept ETCO's bid submitted on October 21, 2010, because it did not include the required complete, combined scope of Plumbing, HVAC and Controls. On November 29, 2010, Killian entered into a contract with CWU to perform the required work for a total price of $19,387,000, the same amount as Killian's earlier October 21, 2010 bid. (Doc. 48 at ¶ 41.) On December 21, 2010, Killian entered into a subcontract with JRT to provide "all material, equipment and labor necessary for a complete Plumbing, Hydronics and HV/AC Systems per the Project plans and specifications" for $5,446,000.

## II

The district court concluded that based on the undisputed material facts, Killian did not violate section 39.30.060 as a matter of law because there was no issue of material fact with respect to bid shopping or bid peddling. We review the district court's grant of summary judgment de novo, evaluating the evidence in the

3

light most favorable to the nonmoving party. *Austin v. McNamara*, 979 F.2d 728, 733 (9th Cir. 1992). This court also reviews de novo a district court's determination of state law. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

Section 39.30.060 provides in relevant part:

> (2) **Substitution of a listed subcontractor in furtherance of bid shopping or bid peddling before or after the award of the prime contract is prohibited** and the originally listed subcontractor is entitled to recover monetary damages from the prime contract bidder who executed a contract with the public entity and the substituted subcontractor but not from the public entity inviting the bid. **It is the original subcontractor's burden to prove by a preponderance of the evidence that bid shopping or bid peddling occurred.** Substitution of a listed subcontractor may be made by the prime contractor for the following reasons:

Wash. Rev. Code § 39.30.060(2) (emphasis added).

On its face, the statute *only* prohibits "[s]ubstitution of a listed subcontractor *in furtherance of bid shopping or bid peddling* before or after the award of the prime contract." *Id.* (emphasis added). Since the statute also expressly places the "burden to prove by a preponderance of the evidence that bid shopping or bid peddling occurred" on "the original subcontractor," it is clear that the legislature intended to create a cause of action for subcontractors *only* in cases where they are able to meet their burden of presenting evidence of bid shopping or bid peddling. This reading of the statute is supported by its legislative history which reflects that after the Washington Court of Appeals held in *McCandlish Electric, Inc. v. Will*

4

*Construction. Co.*, 25 P.3d 1057 (Wash. Ct. App.) that a 1995 version of section 39.30.060 did not provide a cause of action for subcontractors against prime contractors who engage in bid shopping, the legislature amended the statute in 2002 to create a cause of action for subcontractors who can meet their burden of presenting evidence of bid shopping. *See McCandlish*, 25 P.3d at 1062-63 (affirming trial court's finding that defendant prime contractor had engaged in the unethical practice of bid shopping but concluding that the 1995 version of section 39.30.060 did not provide subcontractor plaintiff with a legal cause of action against defendant).

While no Washington case has expressly defined bid shopping, the court in *McCandlish* established what criteria courts consider in determining whether a contractor has engaged in bid shopping. *McCandlish*, 25 P.3d at 1060. The Washington Court of Appeals looked to a 1994 Attorney General Opinion which addressed section 39.30.060 and the issue of bid shopping. It stated:

> The [Final Legislative Report] describes a form of "bid shopping" in which a contractor obtains quotes from subcontractors that are used in preparation of the contractor's bid on the public works project. Then, after having been awarded the bid, the general contractor would either substitute another subcontractor who would be willing to do the work for less money (thus benefitting directly from the savings), or would use the threat of changing subcontractors to force the original subcontractor to reduce its price. This "bid shopping" practice is regarded as unethical by many in the building industry. Our review of the legislative history showed that there was support from both the general contractors and the specialty contractors for Substitute House Bill 1370. [The bill was codified as Wash. Rev. Code § 39.30.060.]

5

*Id*. at 1061 (quoting 1994 Op. Att'y Gen. 14, at 4 n.2).

The undisputed facts show that ETCO failed to present any evidence that Killian engaged in bid shopping or bid peddling. ETCO acknowledged in its pleadings that Killian's mistake in submitting ETCO's bid to CWU was a "regrettable human error" that was made by the estimator at Killian. (Doc. Nos. 102 at 9; 112 at 6.) ETCO presented no evidence that Killian benefitted from its mistake, or that Killian substituted JRT for ETCO "thus benefitting directly from the savings" generated by JRT's "willing[ness] to do the work for less money." *McCandlish*, 25 P.3d at 1061 (quoting 1994 Op. Att'y Gen. 14, at 4 n.2). Indeed, Killian ultimately paid roughly $400,000 more to subcontract with JRT than it would have paid based on the bid submitted by ETCO. As the district court pointed out, "Killian bid the job with CWU on the assumption it would have a subcontract with ETCO for HVAC, Plumbing and Controls in the amount of $5,052,000. Instead, it ended up with a subcontract with JRT for those same items (without alternates) in the amount of $5,446,000." (Doc. No. 102 at 10.) "CWU paid the same amount to Killian whether ETCO had been the subcontractor on HVAC, Controls and Plumbing, or with JRT as the subcontractor on those three scopes of work." (Id. at 11.)

ETCO also presented no evidence that Killian "use[d] the threat of changing subcontractors to force [ETCO] to reduce its price." *McCandlish*, 25 P.3d at 1061

6

(quoting 1994 Op. Att'y Gen. 14, at 4 n.2). As the district court noted, when Killian informed ETCO of its mistake, and that it "thought it was getting all three scopes for $5 million and used that figure in making its prime contract bid[,] [i]n an apparent effort to rectify the mistake, ETCO increased the price for all three scopes to in excess of $7 million." (Doc. No. 102 at 11.) Killian formally notified ETCO on November 16, 2010, that it was unable to accept ETCO's proposal and did not enter into the contract with CWU until November 29, 2010.

Because ETCO failed to present any evidence that Killian substituted JRT for ETCO in furtherance of bid shopping or bid peddling in violation of Rev. Code Wash. § 39.30.060, we affirm the district court's ruling on that basis alone and do not reach the merits of the district court's alternate rulings. *See Schneider v. Vennard (In re Apple Sec. Litig.)*, 886 F.2d 1109, 1112 (9th Cir. 1989) (this court may affirm a grant of summary judgment on any ground fairly supported by the record).

**AFFIRMED.**

7