

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 2 6 2018
Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00am on 7-26-18

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

SPECIALTY ASPHALT &
CONSTRUCTION, LLC,
a Washington limited liability
company, and LISA JACOBSEN,
an individual,

Petitioners,

v.

LINCOLN COUNTY, a Washington
State County,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 95085-7

EN BANC

FILED       JUL 2 6 2018

FAIRHURST, C.J.—Specialty Asphalt & Construction LLC and its majority owner, Lisa Jacobsen (Specialty), brought suit against Lincoln County (County) for gender discrimination, negligent misrepresentation, and breach of contract arising out of the County's bidding and contracting process for a paving project. Through various motions, Specialty lost all three claims at the trial court. The Court of

Appeals affirmed, and Specialty petitioned for review. We reverse the Court of Appeals in part and affirm in part. We hold that Specialty defeated the County's motion for summary judgment on the gender discrimination and negligent misrepresentation claims but the contract claim was properly dismissed. The case is remanded to the trial court to reinstate the two surviving claims.

## I. FACTS AND PROCEDURAL HISTORY

A.    Factual background

Specialty, a licensed contractor that performs paving and maintenance work, responded to a call for bids from the County for a paving project. Jacobsen first learned about the project when the County called her business to ask if it worked in the area. Jacobsen then received the bid proposal via e-mail from the County. On two separate pages, the bid proposal stated that no bond was required. Clerk's Papers (CP) at 293 ("No proposal bond or performance bond will be required."), 297 ("No bid bond or performance bond is required for this bid."). The bid proposal was prepared by Phil Nollmeyer, the county operations and permit coordinator. He used the maintenance project template that had the no bond required language because bonds are not required for the purchase of materials or simple maintenance contracts. The County claimed that Nollmeyer made a clerical error and that he should have removed the no bond required language.

The bid proposal announced a scheduled opportunity to view the project and scope of work prior to the bid deadline (referred to as a walk-through). Jacobsen was the only contractor to attend the walk-through, which was led by three county commissioners and Nollmeyer. At the beginning of the walk-through, Nollmeyer made a comment that Jacobsen's shoes with heels were not the most appropriate attire for the walk-through. During the walk-through, the commissioners sought Jacobsen's recommendations for the project, which the County subsequently incorporated into the bid proposal's addendum 1. A few days after the walk-through, a male representative of Arrow Concrete & Asphalt Specialties, Inc.[1] came to see the paving project location. Nollmeyer showed him where the work locations were and went over the basic tasks to be performed, essentially giving an unscheduled private walk-through.

Prior to the bid deadline, Nollmeyer called Jacobsen and asked if Specialty was going to submit a bid. He discouraged her from bidding because the project was more trouble than it was worth.[2] Nevertheless, Jacobsen submitted a bid for the project on behalf of Specialty. The County also received a bid from Arrow. According to the addendum 1, the bids would be opened on August 5, 2013.

---

[1] Arrow is owned by David Lawless, an acquaintance of Nollmeyer's.

[2] Jacobsen believed Nollmeyer's comments and attitude via the phone call implied that he did not believe that her company, owned and operated by a woman, could handle the complexity of the job. Her beliefs about the motivation for Nollmeyer's alleged phone call are speculation, and we do not rely on them. "A nonmoving party in a summary judgment may not rely on speculation." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

On August 6, 2013, the County awarded the project to Specialty. The day after awarding the project to Specialty, the County began Department of Labor and Industries (L&I) contractor tracking which allowed the County to track Specialty's status on an ongoing basis.[3] Nollmeyer testified that the County normally checks contractor status on the L&I website prior to awarding bids to ensure that the contractors are not disbarred.[4] He admitted that he checked Specialty's status prior to awarding the bid but could not recall if he did so for Arrow. He denies having initiated contractor tracking, but the evidence shows that *someone* at the County did, unless it truly was a clerical error on L&I's part. Wash. Supreme Court oral argument, *Specialty Asphalt & Constr. LLC v. Lincoln County*, No. 95085-7 (May 15, 2018), at 30 min., 40 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2018051035.

Several days after August 5, 2013, because she had not yet been notified of the award, Jacobsen called the County and asked who had received the award. The woman on the phone, either Shelly Johnston, the county auditor, or Marci Patterson, the deputy clerk to the board of commissioners, told Jacobsen that Specialty had gotten the award, Nollmeyer had been directed to call her with news of the award,

---

[3] Jacobsen believed that the County initiated contractor tracking because Nollmeyer was disappointed that Specialty had received the award and he hoped to find a reason to disqualify the company. Jacobsen's beliefs about the motivation for Nollmeyer's alleged actions are speculation and we do not rely on them. *Seven Gables Corp.*, 106 Wn.2d at 13.

[4] *Checking* contractor status is different from *tracking*.

and a notification had been sent by mail. The day after her phone conversation, Jacobsen received the award letter (dated August 6, 2013) by mail and the commissioners' order signed by the county commissioners. Jacobsen began to mobilize resources and materials for the project and told her assistant to stop accepting new jobs because their schedule would be full for the season.

A few days later, Jacobsen received a letter from the County (dated August 12, 2013) with the contract and contract bond. Jacobsen signed the contract on behalf of Specialty on August 16, 2013, and on the contract bond, she wrote "[n]o proposal bond or performance bond required as per page #2" and left it unsigned. CP at 307. She mailed both documents back to the County. The county commissioners did not countersign. After receiving the documents, Johnston called Jacobsen and told her that the County now required a bond for the project. Jacobsen objected to this change because the bid explicitly provided that no bond was required and because she believed the bond to be a significant item. Jacobsen also explained that Specialty had performed similar public works projects for the city of Davenport, located within the county, *without* a bond, and that the County could accept responsibility for proceeding without a bond.

On August 19, 2013, the County withdrew the bid award. On or about August 20, 2013, a new call for bids was sent out with a bond requirement. Specialty sent a demand letter (dated August 23, 2013) requesting that the County maintain its bid

award. In the letter, Specialty conceded that the bond was statutorily required by RCW 39.08.010, but claimed that failure to require the bond does not void the contract. In response, the County ceased and withdrew the rebidding process. The County was willing to proceed with Specialty's award of the original bid so long as Specialty obtained the bond. The County also offered to reimburse Specialty for the expense of the bond premium. Jacobsen believed that this would expose both parties to liability for collusion or bid rigging. Sometime after August 19, 2013, Jacobsen had a phone conversation with county commissioner Scott Hutsell, who described the situation as a mess. He assured Jacobsen that he would investigate the available options that would enable the project to go forward with Specialty.

The following spring, April 2014, the County contacted Specialty to see if the project could be done with the bond at the County's expense. The County indicated that in the alternative it would look to use the small works roster to complete the project and invited Specialty to be included on the roster. Shortly thereafter, Specialty filed suit.

B.     Procedural history

In May 2014, Specialty sued the County for breach of contract, seeking injunctive and declaratory relief.[5] In October 2015, over a year later, Specialty filed

---

[5] Specialty's prayer for relief was as follows:

a motion for leave to add a party and amend the complaint. Specialty sought to add intervenor Jacobsen as an additional plaintiff and add claims of negligent misrepresentation and gender discrimination under RCW 49.60.030. The trial court granted the motion over the County's objection.

The County filed a motion for summary judgment, seeking dismissal of all claims. The trial court granted partial summary judgment and dismissed the discrimination and negligent misrepresentation claims but denied the motion with regard to the contract claim. Specialty filed a motion for reconsideration of the trial court's summary judgment order, which the trial court denied.

After the summary judgment order, Specialty filed a motion for leave to file a second amended complaint. Specialty sought to modify the prayer for relief on the contract claim to add monetary damages in an amount to be proved at trial. The County objected to the motion, arguing that the amended complaint was futile

---

4.1     For an order for injunctive relief to enjoin the execution of a contract between Lincoln County and any other bidder for the Project;

4.2     For a mandatory injunction in favor of Specialty Asphalt to complete the Project without any requirement for a bond;

4.3     For a declaratory judgment that the type of work requested for the Project, which is maintenance work not construction work, and does not require a bond;

4.4     For a Declaratory Judgment that Lincoln County's payment of the bond does not constitute bid rigging or collusion;

4.5     For a judgment that Lincoln County pay the bond pursuant to RCW 39.08.015;

4.6     For an award of reasonable attorney fees and other costs permitted by law;

4.7     For such other relief the Court deems fair and equitable.

CP at 7.

because Washington law provided that an injunction was the exclusive remedy for the claim. The trial court agreed and denied the motion. The County conceded the breach of contract issue, stipulated that Specialty could complete the project under the terms of the written contract that Specialty signed on August 16, 2013 (without a bond), and moved to compel specific performance or, alternatively, dismiss the case as moot. Specialty objected, but the trial court issued an order granting the County's motion. In that order, the trial court issued a deadline for Specialty to declare whether it intended to complete the project. The trial court also found that Specialty would be entitled to recover reasonable increased costs for the project because of the County's delays. The County was ordered to allow Specialty to perform the contract *without* a bond. Specialty filed a timely notice declaring its intent to *not* perform the contract. Its stated reasons included that the cost of the project had increased, the condition of the parking lot had deteriorated, the law governing the project had changed, and it was unclear whether Specialty would be able to recover the costs associated with the project. The County argued that since Specialty chose not to avail itself of the only remaining relief, no justiciable controversy remained and the case should be dismissed. The trial court agreed and dismissed the case as moot.

Specialty appealed, and the Court of Appeals affirmed. *Specialty Asphalt & Constr., LLC v. Lincoln County*, No. 34480-1-III, slip op. at 1 (Wash. Ct. App. Aug.

29, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/344801_unp.pdf.

Specialty petitioned for review, which we granted.

## II. ISSUES

A.    Whether summary judgment dismissal of the gender discrimination claim was proper.

B.    Whether summary judgment dismissal of the negligent misrepresentation claim was proper.

C.    Whether denial of the motion to amend and dismissal of the contract claim was proper.

## III. ANALYSIS

A.    Summary judgment dismissal of the gender discrimination claim was improper

1.    *Standard of review*

We review the trial court's grant of summary judgment de novo. *Camicia v. Howard S. Wright Constr. Co.*, 179 Wn.2d 684, 693, 317 P.3d 987 (2014). Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts and reasonable inferences in the light most favorable to the nonmoving party, but the nonmoving party may not rely on speculation. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986); *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992) (to overcome summary

judgment, "the employee must do more than express an opinion or make conclusory statements"). "When the record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation." *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 445, 334 P.3d 541 (2014) (citing *Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 90, 272 P.3d 865 (2012)). "However, 'when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.'" *Ruff v. County of King*, 125 Wn.2d 697, 703-04, 887 P.2d 886 (1995) (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

> 2. *We reverse the Court of Appeals because there are competing inferences of discrimination and nondiscrimination*

Jacobsen brought a claim of gender discrimination under the Washington Law Against Discrimination, RCW 49.60.030.[6] The purpose of the law is to deter and to eradicate discrimination in Washington. *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 309-10, 898 P.2d 284 (1995). "[A]n independent contractor may bring an action for discrimination in the making or performance of [a] contract

---

[6] RCW 49.60.030 does not provide the criteria for a prima facie claim, so we crafted criteria through case law.

> [T]he plaintiff in a sex discrimination case must show (1) membership in a protected class; (2) the plaintiff was similarly situated to members of the opposite sex, i.e., that he or she was qualified for the position applied for or was performing substantially equal work; (3) because of plaintiff's sex he or she was treated differently than members of the opposite sex.

*Marquis v. City of Spokane*, 130 Wn.2d 97, 113-14, 922 P.2d 43 (1996).

for personal services." *Marquis v. City of Spokane*, 130 Wn.2d 97, 100-01, 922 P.2d 43 (1996). To establish discriminatory action, "plaintiffs may rely on circumstantial, indirect, and inferential evidence." *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 526, 404 P.3d 464 (2017) (assessing a claim under RCW 49.60.180). Specialty's evidence should be "taken together" when considering whether there are "'reasonable but competing inferences of both discrimination and nondiscrimination.'" *Id.* at 535-36 (emphasis omitted) (quoting *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 186, 23 P.3d 440 (2001)).

Jacobsen was required to show that she was somehow treated *differently* from similarly situated members of the opposite sex because of her gender. The *Marquis* case provides three examples to do so:

> [(1)] [T]hat he or she was denied the position, [(2)] was offered a contract only on terms which made the performance of the job more onerous or less lucrative than contracts given to members of the opposite sex, or, [(3)] once offered the contract, was treated in a manner that made the performance of the work more difficult than that of members of the opposite sex who were similarly situated.

130 Wn.2d at 113-14. Specialty's claim falls within the third example.[7] After Specialty was awarded the bid, the performance of the work became more difficult. We consider the County's treatment of Specialty (and Jacobsen) before and after the award.

---

[7] The first two examples are inapplicable. Specialty was awarded the bid, so Jacobsen cannot claim that she was denied the position. Only one bid was awarded and one contract formed, so there were no contracts given to members of the opposite sex to compare against.

a. *Direct evidence of discrimination*

Specialty argued that Nollmeyer's alleged comment about Jacobsen's attire and alleged phone call are direct evidence of discrimination. At the walk-through, Jacobsen described that she "observed the condition of the potholes, the parking lot in general, and the cracks in the paving." CP at 412. She was told that her shoes were not the most appropriate attire for the walk-through. This comment, standing alone, likely does not create a reasonable inference of discrimination. It may have even been a prudent comment to avoid potential injuries.[8] After the walk-through, Nollmeyer called Jacobsen and discouraged her from bidding on the paving project. The phone call is evidence of discriminatory intent, not benevolence. *Cf.* Wash. Supreme Court oral argument, *supra*, at 31 min., 55 sec.

b. *Comparative evidence of Specialty and Arrow*

Specialty argued that it was treated differently from Arrow, a similarly situated business, because Arrow received an unscheduled private walk-through. In comparison, Specialty attended the scheduled walk-through with Nollmeyer and three county commissioners. Both contractors received information about the basic

---

[8] For example, people may file suit if they fall or are injured in parking lots. *See, e.g., Jones v. Wal-Mart Stores E., LP*, 2014-CA-01826-COA, 187 So. 3d 1100, 1101 (Miss. Ct. App. 2016) (customer sued Wal-Mart after tripping over a parking lot pothole); *Chance v. Wal-Mart E., LP*, 3:14-cv-363-WHB-RHW, 2015 WL 4496442 (S.D. Miss. July 23, 2015) (unpublished) (customer sued Wal-Mart after injuring herself in an indentation in the parking lot); *Quick v. Strategic Rest. Acquisition Co.*, 3:12-cv-301-CWR-LRA, 2013 WL 1305583 (S.D. Miss. Mar. 28, 2013) (unpublished) (customer sued Burger King for injuries after tripping on a pothole in the parking lot).

tasks to be performed, but there may be an inference that Nollmeyer was treating Arrow more favorably by departing from the scheduled walk-through per the terms of the bid proposal. In addition, Nollmeyer explained that the County normally checks contractor status on the L&I website prior to awarding bids, but in this case, he admitted to checking only Specialty's status. He could not recall if he checked Arrow's status. When viewed in light of all the other evidence, the inference of discrimination becomes stronger.

### c.    *Postaward treatment of Specialty*

After Specialty received the award, the County continued to take actions that underscore our inference of discrimination. The County tracked Specialty's status via the L&I website[9] and altered the terms of the contract by requiring a bond for the project. Normally bidders are checked *before* an award is made, and the County offered no explanation for why Specialty was subjected to ongoing tracking postaward. With regard to the bond, the County claimed that it should have been included in the bid proposal yet was omitted due to a clerical error. The County believed the bond to be statutorily mandated by RCW 39.08.010, and Specialty conceded this. Nonetheless, Specialty argued that failure to require the bond did not void the contract.

---

[9] As noted, the County disputes this and claims it must have been a clerical error by L&I.

While the County did make multiple attempts to ensure that Specialty still performed the project (either by obtaining a bond with the premium expense reimbursed, rebidding the project with a bond, or through work on the small works roster), none of these options adhered to Specialty's award, as given. Eventually the County conceded the breach of contract issue and agreed to let Specialty perform the work *without* a bond. These inconsistent positions about the bond requirement create doubt about the accuracy of the County's alleged nondiscriminatory reason, that the entire bond issue was a clerical error.[10]

### d.    *The evidence "taken together"*

Some elements of Specialty's evidence, standing alone, might not create a reasonable inference of discrimination, but when we view the evidence *together*, the inference of discrimination becomes quite strong. Because there are reasonable inferences of discrimination and nondiscrimination, the record is sufficient to defeat a motion for summary judgment. *Mikkelsen*, 189 Wn.2d at 536. We reverse the Court of Appeals and reinstate the gender discrimination claim.

---

[10] The County took the position that Specialty failed to make a prima facie claim, so it never actually assumed any burden to prove a legitimate nondiscriminatory reason under the framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

B.    Summary judgment dismissal of the negligent misrepresentation claim was improper[11]

1.    *Standard of review*

We review the trial court's grant of summary judgment de novo. *See supra* Section III.A.1. We review the issue de novo and consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Mohr v. Grant*, 153 Wn.2d 812, 821, 108 P.3d 768 (2005) (plurality opinion).

2.    *We reverse the Court of Appeals because Specialty provided evidence of its reliance damages, which are recoverable*

Specialty sued the County for negligent misrepresentation. To prevail on such a claim, a plaintiff must prove, by clear, cogent, and convincing evidence that

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

---

[11] The County argued that Specialty waived its negligent misrepresentation claim by failing to "contend that the trial court or the Court of Appeals erred in its dismissal of the claim." Resp't's Suppl. Br. at 5. When an assignment of error "was neither argued nor briefed," we deem it waived. *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992). Similarly, when the petitioners "made no arguments to support [their] issue in either their petition for review or supplemental brief," we did not consider the issue. *In re Det. of A.S.*, 138 Wn.2d 898, 922 n.10, 982 P.2d 1156 (1999). In contrast, in this case, Specialty explained that it was appealing the Court of Appeals decision affirming summary judgment for gender discrimination and negligent misrepresentation, provided a section for the summary judgment standard of review, made some attempt to brief the issue in its motion for discretionary review, albeit minimal, and then dedicated nearly six pages to the argument in its supplemental brief. The claim is not waived.

*Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007); *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 545, 55 P.3d 619 (2002) (Washington has adopted *Restatement (Second) of Torts* § 552 (Am. Law Inst. 1965)). The Court of Appeals affirmed the trial court's summary judgment dismissal, finding that Specialty failed to prove damages. *Specialty Asphalt & Constr.*, slip op. at 10-11.

We agree with Specialty that summary judgment was improper because Specialty provided evidence of its recoverable reliance damages. *See* RESTATEMENT § 552B(1)(b) (recoverable damages include "pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation"). The *Restatement* applies the "out-of-pocket loss" rule as the measure of damages, which is the same rule that is stated in § 549(1), so comments a through f of that section are applicable. RESTATEMENT § 552B cmt. a. "[L]oss may be sustained . . . when he has incurred *expenses in preparation* for a use of the article for which it would have been appropriate if the representation had been true." RESTATEMENT § 549(1) cmt. a. (emphasis added). The Court of Appeals found that Specialty had no damages simply because "Specialty never performed on the contract." *Specialty Asphalt & Constr.*, slip op. at 11. This ignores the availability of reliance damages that are incurred prior to performance. Even though the County initially offered to cover the cost of the bond and later rescinded the need for the bond, potentially alleviating the pecuniary damage, Specialty provided evidence that it would cost more than the

bond premium to acquire a bond. Appellants' Suppl. Br. at 15; CP at 285-86 (referring to administrative time to prepare for the bond and a bond cap that could preclude the company from bidding on other more lucrative projects that require bonds). By the time the bond requirement was removed, over two years had passed so that the project "no longer existed" in the same financial state. Appellants' Suppl. Br. at 16; CP at 412 (the condition of the work site deteriorated and would require more labor and materials).

The County argued that summary judgment was proper because Specialty could not have justifiably relied on the misinformation in the bid, but this is not a basis for affirming summary judgment. *ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 828, 959 P.2d 651 (1998) ("Whether a party justifiably relied upon a misrepresentation is an issue of fact.").

### 3. *The public duty doctrine does not bar the claim*

Alternatively, the County argued that Specialty's negligent misrepresentation claim is barred by the public duty doctrine.[12] Under the public duty doctrine, "'no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not

---

[12] At the Court of Appeals, Specialty argued that the public duty doctrine does not apply because the County was performing a proprietary function and, even if it does apply, there was a special relationship between the parties creating an exception to the doctrine. Specialty did not brief this issue at our court, but based on the County's briefing, we consider the doctrine and its exceptions.

merely the breach of an obligation owed to the public in general.'" *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001) (plurality opinion) (internal quotation marks omitted) (quoting *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988)). An exception to the public duty doctrine applies if there is a "special relationship" between the parties. *Id.* at 786. A special relationship arises where "'(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give[] rise to justifiable reliance on the part of the plaintiff.'" *Id.* (internal quotation marks omitted) (quoting *Beal v. City of Seattle*, 134 Wn.2d 769, 785, 954 P.2d 237 (1998)). Here, the parties were in privity because the trial court found that an enforceable contract had been formed. The contract thus formed the basis for express assurances and gave rise to justifiable reliance by Specialty. The public duty doctrine does not bar the claim because the parties formed a "special relationship."

Accordingly, we reverse the Court of Appeals and reinstate the negligent misrepresentation claim. Specialty alleged pecuniary damages sufficient to overcome a summary judgment dismissal, whether Specialty justifiability relied on the misrepresentation is a factual issue, and the claim is not barred by the public duty doctrine.

C.    Denial of the motion to amend and dismissal of the contract claim was proper[13]

1.    *Standard of review*

We review the trial court's denial of the motion to amend and dismissal of the contract claim for manifest abuse of discretion. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 737, 837 P.2d 1000 (1992). "The trial court's decision 'will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

2.    *We affirm the Court of Appeals because injunctive relief is the exclusive remedy for Specialty's contract claim*

Specialty argued that it was entitled to pursue monetary damages for its breach of contract claim, analogizing its case to *Scoccolo Construction, Inc. v. City of Renton*, 158 Wn.2d 506, 145 P.3d 371 (2006). The Court of Appeals and the trial court instead relied on *Skyline Contractors, Inc. v. Spokane Housing Authority*, 172 Wn. App. 193, 289 P.3d 690 (2012). We agree with the Court of Appeals and the

---

[13] The County argued that Specialty waived any relief on its contract claim because Specialty already gave notice of its inability to perform the paving project. This did not waive the claim because Specialty still sought monetary damages. The County also argued that Specialty waived the claim because it failed to brief the issue, but that assertion is easily refuted. *See* Mot. for Discr. Review at 18-20.

trial court that Specialty's exclusive relief for its contract claim was an injunction, not damages.

In *Scoccolo*, we affirmed the monetary damages award in favor of Scoccolo, the contractor, *after* Scoccolo completed the project but incurred damages stemming from delays attributed to Renton. 158 Wn.2d at 509-10. The case presents an obvious distinguishing factor—Scoccolo completed the project; Specialty did not, nor did it even begin performance. The trial court addressed this scenario in its order granting the County's motion to compel, explaining that since "the costs of completing this project have likely increased, Plaintiff would be entitled to recover reasonable increased costs because of the County's delays." CP at 598. Specialty still chose *not* to perform.

In contrast, in *Skyline*, the facts were much more analogous to Specialty's situation. The Spokane Housing Authority (SHA) awarded a public works contract to Skyline, creating mutual contractual responsibilities. *Skyline*, 172 Wn. App. at 200. The SHA then repudiated its agreement and contracted with another party. *Id.* at 204. "Had this not been a public works contract . . . Skyline [would have a claim] for damages for breach of contract." *Id.* The court in *Skyline* appropriately relied on principles established by this court. In *Mottner v. Town of Mercer Island*, we explained that an injunction, not monetary damages, is the "appropriate remedy for the bidder on a public work contract who feels aggrieved by the action of the

20

government." 75 Wn.2d 575, 579, 452 P.2d 750 (1969). Similarly, monetary damages were denied in *Peerless Food Products, Inc. v. State*, 119 Wn.2d 584, 835 P.2d 1012 (1992).

> [W]hile equitable, extraordinary, or declarative relief may serve the public interest by preventing the award and execution of a contract for an excessive amount, permitting damages in such cases serves the bidder's interest alone, and is contrary to the public interest the competitive bidding laws were designed to protect, further burdening a treasury already injured by paying too high a price for the goods or services.

*Id.* at 591 (emphasis omitted) (quoting James L. Isham, Annotation, *Public Contracts: Low Bidder's Monetary Relief against State or Local Agency for Nonaward of Contract*, 65 A.L.R.4th 93, § 2[a] (1988)).

The trial court properly denied the motion to amend and dismissed the contract claim because Specialty can only pursue an injunction. Though we affirm the Court of Appeals on this issue, Specialty is not barred from recovering monetary damages from the County. To do so, Specialty must pursue them through its negligent misrepresentation claim, *supra* Section III.B, not a breach of contract claim.

## IV. CONCLUSION

Specialty sued the County for gender discrimination, negligent misrepresentation, and breach of contract, but lost all three claims at the trial court. The Court of Appeals affirmed. We reverse the Court of Appeals in part and affirm in part. We reverse the Court of Appeals with regard to the gender discrimination

and negligent misrepresentation claims. Specialty defeated the County's motion for

summary judgment, and those claims are hereby reinstated. We affirm the Court of

Appeals holding that an injunction is the exclusive remedy for Specialty's contract

claim. That claim was properly dismissed. Neither party is awarded attorney fees.[14]

---

[14] Both parties requested an award of reasonable attorney fees and costs on appeal. RAP 18.1(b) requires "'[a]rgument and citation to authority' as necessary to inform the court of grounds for an award, not merely 'a bald request for attorney fees.'" *Hudson v. Hapner*, 170 Wn.2d 22, 33, 239 P.3d 579 (2010) (alteration in original) (quoting *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998)). Specialty requested an award of reasonable attorney fees under the Washington Law Against Discrimination (WLAD). This slight reference is hardly an argument. Nonetheless, we recognize that RCW 49.60.030(2) provides for recovery of attorney fees. But Specialty's request is premature. Specialty may recover attorney fees if the trial court finds that the County violated WLAD on remand. The County sought attorney fees on the basis that Specialty's appeal was frivolous. This argument surely fails for the gender discrimination and negligent misrepresentation claims. With regard to the contract claim, we agree with the Court of Appeals that there were debatable issues and thus deny the request.

Fairhurst, C.J.

WE CONCUR:

_____          Wiggins, J.

Madsen, J.                        González, J.

Owens, J.                         _____

Stephens, J.                      Yu, J.

No. 95085-7

GORDON McCLOUD, J. (concurring in part/dissenting in part)—I agree
with the majority's analysis of the negligent misrepresentation and breach of
contract claims. The negligent misrepresentation claim clearly survives summary
judgment; the breach of contract claim clearly fails on summary judgment.

I also agree with the bulk of the majority's analysis of the gender
discrimination claim: "[w]e consider all facts and reasonable inferences in the light
most favorable to the nonmoving party"; "the nonmoving party may not rely on
speculation," majority at 9; we view the evidence cumulatively to decide "whether
there are 'reasonable but competing inferences of both discrimination and
nondiscrimination,'" *id.* at 11 (internal quotation marks omitted) (quoting *Mikkelsen
v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 536, 404 P.3d 464
(2017)).

But I disagree with the majority's application of those rules to the facts of this
case. The majority is certainly correct that Lincoln County (County)'s comment
about the high heels worn by Specialty Asphalt & Construction LLC's owner, Lisa

1

Jacobsen, cannot give rise to an inference of discrimination; there is absolutely no indication that this comment about inappropriate attire at a construction work site was directed at Jacobsen due to gender rather than the more obvious safety concern. Clerk's Papers at 280, para. 9 (Aff. of Lisa Jacobsen in Opp'n to Def.'s Mot. for Summ. J.) ("At the beginning of the walk-through, in front of the Commissioners, Mr. Nollmeyer had made a comment that the shoes with he[e]ls that I was wearing was not the most appropriate attire for a walk-through."). But the remaining factors upon which the majority relies do not give rise to an inference of gender discrimination either. Those remaining factors are providing a bidding competitor on this relatively small public works project with an unscheduled walk-through (majority at 12), checking Specialty's contractor status on the appropriate state website while not remembering whether the competing bidder's status was checked (*id.* at 13), tracking Specialty's status on that website after awarding the bid (*id.*), and "alter[ing] the terms of the contract by requiring a bond for the project." *Id.*

Providing a bidding competitor on a relatively small public works project with an unscheduled and likely uncomplicated walk-through as a courtesy, when there is no indication that such a courtesy was or would have been denied to Jacobsen, does not give rise to an inference of discrimination in my mind. Checking and tracking Specialty's contractor status on the appropriate state website set up for that purpose

2

while not remembering whether the competing bidder's status was checked does not give rise to an inference of discrimination in my mind either; checking seems like an indication of prudence, not discrimination.

The final fact upon which the majority relies is the County's decision to alter what was clearly a significant contract term after it awarded the bid. That is certainly an actionable alteration; that is the reason that the negligent misrepresentation claim clearly survives summary judgment. But when combined with the fact that the County took so many other steps to try to address this problem—like "the County['s] . . . multiple attempts to ensure that Specialty still performed the project (either by obtaining a bond with the premium expense reimbursed, rebidding the project with a bond, or through work on the small works roster)," majority at 14—this does not give rise to an inference of gender discrimination in my mind either. Instead, it gives rise to an inference of negligent misrepresentation—which is what I think this case is really about.

For these reasons, I respectfully concur in part and dissent in part.