IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOHANNA LARSON, | ) | No. 37018-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CENTRAL WASHINGTON | ) | |
| UNIVERSITY, a Division of the State of | ) | |
| Washington, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, C.J. — Johanna Larson appeals orders granting Central Washington

University the summary judgment dismissal of Ms. Larson's claims of unlawful

discharge. We affirm.

FACTS

Johanna Larson began working as a secretary in Central Washington University

(CWU)'s department of world languages on August 4, 2014. Her supervisor was Dr. Laila

Abdalla. Ms. Larson's tenure at CWU was marred by ongoing performance problems.

Deficiencies included lack of personal responsibility, dishonesty, and poor attendance.

Ms. Larson was given on-the-job mentoring, but her problems persisted.

Dr. Abdalla provided Ms. Larson a written letter of expectation on August 7, 2015. Among other things, the letter noted the need for Ms. Larson to properly document her work hours and absences. In the letter, Dr. Abdalla stated she wanted to review the expectations set forth in her letter during a meeting to take place on September 23.

On September 3, Dr. Abdalla authored a follow-up letter. In the letter, Dr. Abdalla documented Ms. Larson's ongoing problems, including continued failure to abide by leave protocols. For example, Ms. Larson left work early on August 12, 13, and 31 without notifying Dr. Abdalla or cancelling pending appointments. Dr. Abdalla instructed Ms. Larson that she needed to work on communication and take responsibility for her actions.

The meeting to discuss the two letters took place as scheduled on September 23. At the meeting, Ms. Larson claimed that many of her performance problems were due to confusion and a poor memory. Dr. Abdalla instructed Ms. Larson to create a written report of the issues and expectations that had been discussed. The meeting ended around lunch time. Ms. Larson did not come back after lunch. She instead e-mailed Dr. Abdalla to say she had taken ill.

When Ms. Larson returned to work on September 24, Dr. Abdalla reminded her to complete a report of their meeting by the end of the day, or at least by noon the following

day. Ms. Larson did not do so. Instead, late in the afternoon of September 24, Ms. Larson went to Dr. Abdalla's office and reported she had fallen and hurt her shoulder. Dr. Abdalla drove Ms. Larson to the hospital, where Ms. Larson was treated and released without restrictions.

Ms. Larson returned to work the next day with her arm in a sling. She asked Dr. Abdalla to alter her schedule in light of her shoulder injury. "She stated she could not perform her job duties and she left at noon, again without notifying the Department as had been repeatedly requested in the past." Clerk's Papers (CP) at 157. On September 27, Ms. Larson informed Dr. Abdalla and CWU's human resources department via her work e-mail that she would "be consulting with [her] family doctor concerning [her] injury and return to work." *Id.* at 78.

CWU granted Ms. Larson authorized leave from work due to her injury. During her absence, Ms. Larson's doctor reported to CWU that Ms. Larson should not write or type due to her injury. She was "temporarily restricted in the use of her dominant arm." *Id.*

CWU accommodated Ms. Larson's injury by providing speech recognition software for her computer. She was also given a telephone headset to reduce stress on her

3

shoulder. Ms. Larson received a full salary for the time she lost from work due to her shoulder injury. Ms. Larson's doctor approved CWU's accommodations.

Ms. Larson returned to work on October 12, 2015. Once back at the job, Ms. Larson asked if she could work an alternate schedule as an accommodation for her injury. This request was denied. There is no documentary evidence Ms. Larson's doctor ever recommended an alternate schedule.

Ms. Larson's performance problems continued after her return to work. Dr. Abdulla conferred with her dean and decided to initiate corrective discipline pursuant to CWU's collective bargaining agreement. A predisciplinary letter from the dean, dated October 19, 2015, notified Ms. Larson that CWU was "considering disciplinary action up to and including dismissal." *Id*. at 225. The letter enumerated Ms. Larson's repeated inability to follow timekeeping and leave policies. It directed Ms. Larson to attend a predisciplinary meeting with Dr. Abdulla and other CWU representatives on October 28. Ms. Larson had until 5:00 p.m. on October 28 to submit a written response to CWU's allegations if she chose. She failed to do so. The predisciplinary meeting was rescheduled for November 4.

Ms. Larson was not at work the week of November 2-6, 2015. On November 3, she supplied a note from a medical provider stating she "should not return to work today

4

and until feeling better." *Id*. at 129. The note did not explain the nature of Ms. Larson's medical condition or when she might be able to return to work.[1]

After receiving the November 3 note, CWU sent Ms. Larson a request for more information so it could determine the amount of time she would be gone from work. Ms. Larson did not respond. Instead, she sent an e-mail to Dr. Abdalla on November 6, stating, "I am still ill and will not be in the office today." *Id*. at 75.

Although gone from work, Ms. Larson attended her predisciplinary meeting on November 4. At the meeting, one of the main issues was Ms. Larson's inability to follow CWU's leave notification process. The parties were unable to agree about whether Ms. Larson's conduct was deficient.

Ms. Larson came to work on Monday, November 9, but claimed she was in pain and not feeling well. She told Dr. Abdalla she needed to go home. She also said "she would do the same the next day, that is, come to work for a few hours, and then leave." *Id*. at 157-58.

Ms. Larson's ongoing absences prompted Dr. Abdalla to contact human resources. Dr. Abdalla was advised that under CWU's collective bargaining agreement, Dr. Abdalla

---

[1] Ms. Larson later indicated she had either a cold or the flu during this time period. However, there is no indication that Ms. Larson provided an explanation of her absence during the week of November 2-6 until just over one month after the absence took place.

should request a note from Ms. Larson's doctor "releasing her to work and providing any additional restrictions."[2] *Id*. at 158. After hearing from human resources, Dr. Abdalla e-mailed Ms. Larson. She wrote:

> Dear Johanna,
>
> I am sorry you're continuing not to feel well.
>
> To return to work, please obtain a note from your doctor to let HR and me know if/when you are released to work and/or if any modifications are needed. If modifications are needed, please include specifics and the length of time necessary. You'll need to visit with [human resources] about this as well.

---

[2] The collective bargaining agreement states, in relevant part:

> 45.4.2 The employee, unless physically unable to do so, must notify his or her supervisor as soon as the employee becomes aware that he or she will be absent from work and each day thereafter unless there is a mutual agreement otherwise.
>
> 45.4.3 For absences of three (3) or more consecutive days or where there is a reason to suspect leave abuse, the supervisor may require that an employee submit a certificate from a health care provider verifying the need for sick leave.
>
> 45.4.4 Before returning to work after the employee's own serious health condition, the employee may be required to provide a fitness for duty certificate from a health care provider.

*Id*. at 221-22.

6

I hope you feel better soon.

Take care,

Laila

*Id*. at 76.

Ms. Larson did not respond to Dr. Abdalla's e-mail. Nor did CWU receive any communication from Ms. Larson's doctor excusing Ms. Larson's absence. Over the course of the next month, human resources forwarded paperwork to Ms. Larson to determine whether her absence from work was related to her shoulder injury. Ms. Larson did not provide documentation. On December 9, 2015, CWU notified Ms. Larson that her family medical leave designation had been rescinded due to lack of medical documentation. That same day, Ms. Larson provided a doctor's note, stating she was able to work under the accommodations previously provided. The note did not explain why Ms. Larson had been absent for a month. Ms. Larson returned to work on December 11.

Once back at work, Ms. Larson was asked why she had been absent for the last month. She stated she was simply following Dr. Abdalla's November 9 e-mail. She did not claim her absence was due to a medical necessity. She instead maintained Dr. Abdalla had prohibited her from coming to work until she procured a new doctor's note releasing her to do so.

CWU sent Ms. Larson a second predisciplinary letter based on her unauthorized absence from November 10 through December 10. Another predisciplinary meeting was scheduled for January 8, 2016.

At the predisciplinary meeting, Ms. Larson stated she did not contact Dr. Abdalla prior to her absence because she was exhausted and she assumed Dr. Abdalla knew she would be absent due to the contents of Dr. Abdalla's November 9 e-mail. Ms. Larson stated she tried to schedule an appointment with her doctor in order to get a note clearing her for work, but she was unable to get on the doctor's schedule. CWU gave Ms. Larson until the close of business on January 12 to provide written documentation in support of her position. She did not do so.

On January 14, 2016, CWU issued Ms. Larson a letter of termination. The letter stated she was terminated for unauthorized absences and failure to follow directives to report her absences. CWU's decision took into account Ms. Larson's "employment history and [her] prior warnings." *Id*. at 241. After reviewing Ms. Larson's "performance over the last year [which] indicate[] a pattern of poor work performance, poor communication skills, and an unwillingness to take responsibility for [her] actions or follow specific directives," CWU determined discharge was the most appropriate discipline. *Id*.

8

No. 37018-6-III
*Larson v. Cent. Wash. Univ.*

Ms. Larson sued CWU for unlawful discharge. She claimed the university violated the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654; 29 C.F.R. pt. 825 and discriminated against her based upon her shoulder injury in violation of Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW. Both parties moved for summary judgment. On the day of the summary judgment hearing, Ms. Larson moved to amend her complaint to add a cause of action under Washington's Family Leave Act (WFLA), chapter 49.78 RCW. The trial court noted the WFLA claim was the "same as the one [FMLA] that's already alleged." Report of Proceedings (May 17, 2019) at 18. At this hearing, the trial court heard but did not make a ruling on Ms. Larson's motion to amend her complaint. It only ruled on the summary judgment motions.

The trial court granted CWU's motion for summary judgment and denied relief to Ms. Larson. Ms. Larson moved for reconsideration, in part asserting the trial court improperly denied her motion to amend. The court denied the motion.

Ms. Larson timely appeals the court's summary judgment order and the order denying reconsideration.

ANALYSIS

An order on summary judgment is reviewed de novo. *Specialty Asphalt & Constr., LLC v. Lincoln County*, 191 Wn.2d 182, 191, 421 P.3d 925 (2018). "Summary judgment

9

is proper only when there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law." *Id.* (citing CR 56(c)). "[A]ll facts and

reasonable inferences [are considered] in the light most favorable to the nonmoving party,

but the nonmoving party may not rely on speculation." *Id.*

*WLAD claim*

Ms. Larson claims CWU violated RCW 49.60.180 by discharging her on the basis

of her shoulder injury and failing to accommodate the injury. Although CWU agrees Ms.

Larson's shoulder injury constituted a disability, it disagrees that it engaged in

discrimination. We agree with CWU.

### Unlawful discharge

An employee can prove a claim of discriminatory discharge "either by offering

direct evidence of an employer's discriminatory intent, or by satisfying the *McDonnell

Douglas*[3] burden-shifting test that gives rise to an inference of discrimination." *Alonso v.

Qwest Commc'ns Co.*, 178 Wn. App. 734, 743-44, 315 P.3d 610 (2013). Ms. Larson's

unlawful discharge claim fails on both fronts.

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

10

*Direct evidence of discriminatory intent*

The record lacks any direct, "smoking gun" evidence of discriminatory intent. Ms. Larson makes vague claims that Dr. Abdalla became hostile toward Ms. Larson after the injury her shoulder. But Ms. Larson points to no specific facts to support these allegations. The uncontested evidence from CWU was that Dr. Abdalla had become frustrated with Ms. Larson's job performance months before Ms. Larson injured her shoulder. The fact that Dr. Abdalla continued to exhibit signs of frustration after the injury is not direct evidence of discrimination.

*Indirect evidence*

Because direct evidence of intentional discrimination is rare, our courts permit indirect evidence of discrimination pursuant to the *McDonnell Douglas* evidentiary burden-shifting scheme. *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 526-27, 404 P.3d 464 (2017). To satisfy the first step of the scheme, a plaintiff must present specific and material facts supporting the following elements of a prima facie case: (1) a disability, (2) adverse employment action, (3) satisfactory work, and (4) discharge that occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 488, 84 P.3d 1231 (2004). "If the employee fails to set forth a prima facie case of

discrimination, the employer is entitled to prompt judgment as a matter of law." *Roeber v. Dowty Aerospace Yakima*, 116 Wn. App. 127, 135, 64 P.3d 691 (2003).

Ms. Larson has not satisfied the third and fourth elements of a prima facie case. It is uncontested Dr. Abdalla issued two predisciplinary letters to Ms. Larson prior to her shoulder injury. Ms. Larson therefore cannot establish satisfactory work. Furthermore, because the criticisms of Ms. Larson's work performance predated her injury, the circumstances of her termination do not give rise to an inference of discrimination. *See Anica*, 120 Wn. App. at 489.

*Reasonable accommodation*

Ms. Larson claims CWU failed to accommodate her shoulder injury by not granting her a flexible work schedule. We disagree. To prove failure to accommodate, Ms. Larson must show a requested accommodation was reasonably related to her disability. *See id.*; *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 30, 244 P.3d 438 (2010). No competent evidence satisfies this requirement. None of Ms. Larson's medical providers ever notified CWU that Ms. Larson required a flexible schedule. They instead approved the existing accommodations of dictation software and a headset. Given Ms. Larson's predisability problems with improperly flexing her time and failing to abide by leave protocols,

CWU had a legitimate reason to limit its accommodations to what was identified by Ms. Larson's medical providers. Ms. Larson's accommodation claim fails.

*Protected leave under FMLA & WFLA*

Ms. Larson contends the trial court abused its discretion by refusing to grant her leave to amend the complaint to allege a violation of the WFLA in addition to the federal FMLA.[4] This claim fails because amending the complaint would not have enabled Ms. Larson's claims to escape summary judgment.

The FMLA and WFLA prohibit employers from discriminating or retaliating against employees who take protected leave from work. *Espindola v. Apple King, LLC*, 6 Wn. App. 2d 244, 255, 430 P.3d 663 (2018). There is no evidence here that Ms. Larson's absence from November 10 through December 10, 2015, was protected leave. Ms. Larson admits she was able to work under existing accommodations. Particularly given Ms. Larson's predisability history of dishonesty and leave abuse, CWU was entitled to require documentation justifying her absences. Because Ms. Larson failed to provide any such documentation, CWU permissibly treated Ms. Larson's absence as unauthorized and unprotected.

---

[4] Ms. Larson sought the amendment because CWU claimed it was immune from suit under the FLMA.

No. 37018-6-III
*Larson v. Cent. Wash. Univ.*

CONCLUSION

Ms. Larson was terminated because she repeatedly failed to abide by CWU's leave

policy, not because of any disability. She is not entitled to compensation for unlawful

discharge. The matter is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

14